[Civ. No. 18059.   Second Dist., Div. Two.   Dec. 21, 1950.]

STACY C. LAMB et al., Appellants, v. I. M. WARD et al., Respondents.

John A. Jorgenson for Appellants.

Bertram H. Ross for Respondents.

MOORE, P. J.—A demurrer both general and special having been sustained to their fourth amended complaint the court adjudged that "plaintiffs take nothing by this action" and that defendants recover their costs. The appeal is from such judgment. A reversal is demanded on the grounds that the judgment is uncertain and that the complaint states a single cause of action.

The pleading asserts claims against 38 defendants. Four of these are subsisting corporations; three are fictitious names of corporations; two are actual partnerships; three are partnerships designated by fictitious names; twenty-one are individuals.

It is alleged that plaintiffs as owners of unpatented placer mining claims leased them to Crystal Lime Corporation (herein designated "corporation") on August 24, 1947, and that it took possession thereof on the same day; in March, 1949, corporation caused to be incorporated the Crystal Lime Company (herein called "company") to succeed it; plaintiffs consented to the transfer of its lease to company which agreed to perform all of corporation's obligations, to pay plaintiffs for "certain personal property belonging to plaintiffs on the claims" and to assume and pay plaintiffs $500 cash and the balance of $4,500 as an additional royalty on materials removed, pursuant to the lease, which would be deemed full payment for the personal property. Only $100 of such contract price has been paid. Company took possession of the claims and all the property theretofore placed thereon by corporation and all other assets of the latter. Ever since August 24, 1947, corporation and company have been in possession of the claims, have operated the mine; have had in their possession all the property and improvements thereon; have installed on the claims "certain property and improvements"; have used them in working the mines. All improvements are indispensable elements to the coordinated mining operations. All were there at the time of their sale by defendants on October 25, 1949. The items as listed in the inventory with their reasonable values—attached to the complaint—were imbedded in the land or permanently resting upon it, or permanently attached.

At the time of the sale of the equipment corporation and company were delinquent in the payment of rental due September 1 and October 1, 1949, aggregating $600; had failed to weigh all materials removed from the claims; had failed to pay promptly all labor and material bills and other debts incurred in their mining operations; had failed to operate continuously and not at all during the preceding 90 days; had failed to furnish plaintiffs since July, 1948, statements of weights of materials removed during the preceding month.

October 23, 1949, plaintiffs caused to be prepared and served notice of such defaults, declaring that the lease would be terminated unless the specified defaults were cured within 15 days from the mailing of the notice. A copy of the notice was sent to respondents Ross, corporation and company at their addresses by United States registered mail. On November 2, 1949, copies of a similar notice were by plaintiffs served on the same defendants declaring the existence of default in their failure to pay the minimum rental of $300 due on November 1, 1949, demanding that such default and those mentioned in the notice of October 23, 1949, be remedied within 15 days of the mailing of such copies. On November 9, 1949, plaintiffs prepared and served a written notice on each of the aforementioned defendants in which said defaults (except the rental installments due on September and October 1, 1949) were again recited and demand made for the payment of the $300 rental due on November 1, 1949, and the $4,900 past due for the purchase price of the personal property sold to corporation and company. The same notice demanded the two last named defendants deliver to plaintiffs a sufficient deed conveying to plaintiffs a good and marketable title to the mining claims, and that all equipment, tools, machinery, buildings and fixtures removed on October 25 be restored to plaintiffs on said claims. On November 19, 1949, plaintiffs by use of United States mail repeated the notice and demands of November 9.

None of said defaults has been cured except that on November 1, 1949, plaintiffs were paid the two installments of $300 each maturing September 1 and October 1, 1949.

In the middle of October, 1949, defendants Ward, corporation, company, Ross, Ponder, Coffman, Loewe, Oliver and Jandorf published in various newspapers in Southern California a notice that on October 25, 1949, they would sell to the highest bidder for cash certain specified movables. On the date of sale plaintiffs appeared and orally notified all persons present including defendants of their lease and the terms

thereof and of plaintiffs' claim of ownership of the property advertised for sale and that those who might purchase would do so at their peril and in disregard of the rights of plaintiffs and that the nine defendants had no right to make such sale. Notwithstanding such announcement, the same nine defendants then and there announced that plaintiffs had no rights in said property; that defendants were entitled to make sale and delivery thereof and would guarantee title; whereupon defendants proceeded to auction off to twenty designated defendants the movables.

At the time of the sale certain named defendants converted the personal property then sold or delivered to them to their own use to plaintiffs' damage in the sum of $57,120; and said defendants and defendant Virgil Blaser converted to their own use a quantity of plaintiffs' lime, and the other defendants then and there respectively severed from said real estate where necessary to removal and converted to their respective uses those items of property sold to them to plaintiffs' damage in the amount specified as its value. Certain items have been rendered valueless through the severance and removal of related items, to plaintiffs' damage in the sum of $14,000 and by reason of the severance and removal of other specified items by defendants to plaintiffs' damage in the sum of $9,500 (their value as listed in Exhibit A attached to the complaint).

While certain named defendants have not sold and delivered specified items listed in Exhibit A they claimed the right to do so at said sale and still threaten to dispose of the same, and are attempting to do so. A controversy therefore exists with reference to the right of said defendants to sell and dispose of said items. Defendants corporation and company have failed and refused to deliver a good and sufficient deed cancelling said lease and conveying to plaintiffs a good and merchantable title to said claims, free and clear of all liens, encumbrances, and claims thereon not existing on the date of said lease. Said defendants have refused to deliver possession of said property to plaintiffs. The Nelson Inclined Twin Furnace has been stripped by said defendants of some of its parts to plaintiffs' damage in the sum of $8,000, the lessened value thereof.

Plaintiffs are informed and believe that certain named defendants collected in effecting such sales an aggregate sum of $25,000. Prior to the sale defendants corporation and company and certain named defendants resolved to liquidate said corporation and company, and, for that purpose, appointed

defendant Ross their liquidating agent. Said Ross received said entire fund of $25,000 and still holds the same, and has entered into a written contract with plaintiffs under which he has promised to retain possession of such funds until plaintiffs' claims are adjudicated in this action.

Plaintiffs have not been paid the $300 rent maturing November 1, 1949, nor any part thereof; nor any rent, nor part thereof, accruing thereafter; nor have defendants, corporation or company, since November 1, 1949, performed any of the promises they agreed to perform in said lease.

The complaint is a hopeless compilation in one count of seven separate and distinct causes of action against 39 separate entities. It demands judgment (1) for $93,847 against 18 designated defendants; (2) that plaintiffs are owners of the mining claims and specified movables situate thereon; (3) that defendants wrongfully converted and sold plaintiffs' property; (4) that the proceeds received therefrom are a trust fund for the reimbursement of plaintiffs' damages and that defendants be required to pay such sum to plaintiffs; (5) that the corporation and the company pay plaintiffs $10,000 for attorney's fees; and (6) be required to deliver lessors a deed conveying a merchantable title to the claims free of all encumbrances; (7) that plaintiffs' title to the mining claims be quieted against all defendants; (8) that they be awarded damages caused by the auctioneer who conducted the sale; and (9) for general relief.

Considering the pleading as one to enforce the forfeiture of a lease it must fail for the reason that no sufficient notice of violating the lease appears. The first notice of nonpayment of the September and October rentals was served on October 23. Such installments were paid in November leaving due only the November rent. Since the default was cured there was no breach in effect at the time of filing the complaint November 25, 1949. (*Bedford Investment Co.* v. *Folb*, 79 Cal.App.2d 363, 366 [180 P.2d 361]; *Extension Oil Co.* v. *Richfield Oil Corp.*, 52 Cal.App.2d 105, 108 [125 P.2d 895].)

Appellants deem themselves to be aggrieved because the judgment is "uncertain." We search in vain for such uncertainty. Because the fourth amended complaint demands so many different things against so many different entities in a single count the trial court properly held that the pleading is uncertain and that several causes of action against several distinct entities are alleged and numerous parties are joined in one action on separate grounds for relief. Inasmuch as

respondents urged their demurrer on special grounds they were entitled to a ruling. ██ After such demurrer had been sustained to the fourth successive amended complaint respondents were entitled to judgment. (*Wood, Curtis & Co.* v. *Missouri Pacific Railway Co.,* 152 Cal. 344, 348 [92 P. 868]; *Gridley* v. *Selleck,* 92 Cal.App. 97, 99 [267 P. 708]; *Lapique* v. *Monroe,* 19 Cal.App. 253, 254 [125 P. 760].) ██ When a special demurrer is well founded the merits of the general demurrer are immaterial. (*Cruse* v. *Grubbs,* 121 Cal.App. 554, 559 [9 P.2d 520].)

██ Appellants contend that since they alleged only one distinct primary right of their own to have been violated and but one wrong against that right by respondents, therefore only one cause of action is stated. They maintain that notwithstanding the act of setting forth incidental matters bringing in other parties as necessary to a complete statement of the cause, the pleading does not necessarily state two or more causes of action. Such contention well states a rule that frequently establishes the validity of an extended pleading. But such rule does not prevail where a complaint seeks both legal and equitable relief from various defendants and where the several causes alleged have arisen not only under a lease of land and a license to operate a mine thereon but also from a separate written agreement for the payment of $5,000 combined with causes for conversion of property sold from the mine against the several vendees and an action for damages against the auctioneer who conducted the sale and for counsel fees incurred in the prosecution of this action.

Neither *Burns* v. *Ross,* 190 Cal. 269 [212 P. 17], nor *Wright* v. *Carley,* 11 Cal.App. 325 [104 P. 1009], is authority for appellants' contention. In both the same relief was asked against all the defendants and but one cause of action was alleged. The complaint in *Lichtenthaler* v. *Samson Iron Works,* 32 Cal.App. 220 [162 P. 441], bears no analogy to the pleading here involved. That action was for a breach of warranty contained in a written contract whereby the defendant had agreed to furnish the necessary tools and machinery to erect a pumping plant on the plaintiff's land. The plaintiff's suit was a simple action to recover damages flowing from the breach and did not ask varieties of relief from various defendants. It deserved a reversal of the judgment of dismissal after a demurrer had been sustained without leave to amend. Likewise, *Southern Surety Co.* v. *Bank of Lassen County,* 118

Cal.App. 149 [4 P.2d 952], was an action on contract to which all the defendants had been signatories.

Notwithstanding appellants' expressed contrary intention the varying forms of relief demanded do not contribute to but one cause of action, nor are the allegations all germane to the enforcement of a single primary right. (See 1 C.J.S., Actions, § 68, notes 10-22.) While a complaint may seek both legal and equitable relief and yet allege but a single cause of action (*San Diego Water Co.* v. *San Diego Flume Co.*, 108 Cal. 549 [41 P. 495, 29 L.R.A. 839] ) such rule of pleading by no means covers an attempt where so many persons of different interests are included.

Not only does the instant pleading seek to enforce the forfeiture of a lease but it asserts claims for damages arising from tort, claims arising under a separate contract and damages for conversion of chattels. Because of such condition of their pleading it is now incurable unless this court should disregard the established rules with respect to the finality of judgments entered after a trial of issues at law. The second and third amended complaints both attempted to combine the several causes in a single count. Appellants having refused to conform with the fundaments of correct pleading find themselves now in the unhappy position of having an adverse judgment against them notwithstanding they may be aggrieved by the acts of their own contractees with respect to important property rights.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 15, 1951. Carter, J., and Schauer, J., voted for a hearing.