[Civ. No. 19575.   Second Dist., Div. Three.   Sept. 17, 1953.]

STACY C. LAMB et al., Appellants, v. I. M. WARD et al., Respondents.

John A. Jorgenson for Appellants.

Bertram H. Ross for Respondents.

WOOD (Parker), J.—Action for damages allegedly resulting from the removal of certain property from mining claims owned by plaintiffs. It was alleged in the complaint as a first cause of action that on October 25, 1949, plaintiffs owned certain property (described therein—including buildings, power and automotive equipment, electrical transmissions and installations, tanks and pipe lines); said property was located on certain mining claims in San Bernardino County; on said date defendants severed from the mining claims, removed, destroyed and converted to their own use all of the said property; and plaintiffs were damaged thereby in the sum of $118,935. It was alleged therein as a second cause of action that plaintiffs owned the mining claims, mentioned in the first cause of action, and the property which was located on the mining claims; the property located on the claims was used in working and developing mines thereon, and some of the items of property (specifically referred to therein) were embedded in the land or permanently resting upon or attached to it; on October 25, 1949, defendant without plaintiffs' consent took possession of a certain designated portion of the property which was on the claims, and severed, removed and destroyed same; plaintiffs' mining claims were thereby decreased in value to the extent of $118,935, and that plaintiffs were damaged in that sum. Defendants denied, in their answers, the allegations of the complaint and alleged as a special defense that plaintiffs had filed a prior action, No. 567516, against the defendants herein; that judgment therein was in favor of defendants; that said judgment has become

final and is a bar to all the matters alleged in the present action. It was further alleged as a special defense therein that in another prior action, No. 566571, filed by plaintiffs against the defendants herein, there had been a *retraxit* by the payment of $600 and the dismissal of the action.

The court found that: the complaint in the prior action, No. 567516, was filed by plaintiffs against the defendants herein; it involved the identical matters which are set forth in the complaint in the present action; the judgment in the prior action was in favor of defendants, and said judgment has become final; in the former action, No. 566571, filed by plaintiffs against the defendants herein, defendants paid plaintiffs $600 in full settlement of said action, and the action was thereupon dismissed; and plaintiffs thereby settled all causes of action set forth in the present complaint. The court concluded that by virtue of the final judgment in said prior action all the matters pleaded in the complaint in the present action are res judicata, and that said prior judgment is a bar to this action. Judgment was for defendants, and plaintiffs appeal therefrom.

Appellants contend that the judgment in the former action is not a bar to the present action; and that there was no *retraxit*.

On November 25, 1949, plaintiffs herein filed action No. 567516 (pleaded as a bar to the present action) against the 38 defendants named herein. The fourth amended complaint in said action purported to state a single cause of action and alleged, in part, as follows: Plaintiffs were the owners of certain unpatented placer mining claims. On August 24, 1947, plaintiffs, as lessors, and defendant Crystal Lime Corporation (thereinafter designated as "corporation"), as lessee, entered into a written lease covering said claims, a copy of which lease was attached to and made part of the complaint. The corporation took possession of the mining claims on said date. Thereafter the corporation decided to organize a new corporate entity to be known as the Crystal Lime Company (thereinafter designated as "company"). On March 24, 1949, plaintiffs and the corporation entered into a written agreement whereby plaintiffs consented to a transfer of the lease to the company. The corporation promised it would cause the company to assume all the obligations of the corporation under the lease, and to pay to plaintiffs $5,000 for certain personal property belonging to plaintiffs on said mining claims. The company was organized and the corpora-

tion assigned the lease and transferred all of its assets to the company, and the company agreed in writing to perform all of the obligations under the lease, and it agreed to pay plaintiffs $5,000 for personal property on the claims. The company took possession of the mining claims and all of the corporation's assets. During the possession by the defendant corporation and defendant company they caused to be placed upon the mining claims certain property and improvements, the value and description of which were set forth in an inventory attached to and made a part of the complaint. Said property and improvements were used by the corporation and company in working and developing mines on the claims and were indispensable elements in mining operations thereon. Some of those items (specifically designated therein) were embedded in said land or permanently attached to it. At the time of the sale of the property (therein mentioned) the corporation and the company were in default under the lease in that they had failed to pay the minimum rental of $300, which was due on September 1, 1949, and $300 due on October 1, 1949, and that they were in default in certain other respects. On October 23, 1949, plaintiffs sent written notice by registered mail to defendants corporation, company and Ross that unless the defaults were cured within 15 days the lease would be terminated. On November 1, 1949, plaintiffs were paid the minimum rental of $300 which matured September 1st and $300 which matured October 1st. On November 2, 1949, plaintiffs sent written notice by registered mail to said defendants that a default existed in the failure to pay the rent due on November 1, 1949, and demanded therein that such default, together with other uncured defaults specified in the prior notice be remedied within 15 days. On November 9, 1949, plaintiffs sent a written notice by registered mail to said defendants in which they again recited the defaults and made a demand for the payment of the November 1st rent, the payment of $4,900 past due on the purchase price of personal property sold to the corporation and company, demanded that all equipment, buildings and fixtures removed from the premises on October 25, 1949, be restored to plaintiffs on said premises, and demanded a deed "terminating said lease," and conveying a good and marketable title to the claims to plaintiffs. On November 19, 1949, plaintiffs sent by registered mail to all of the said defendants another copy of said notice. None of the defaults (mentioned in said notice) have been cured and each of them

still exists. In the middle of October, 1949, nine of the defendants, including Ward, the corporation, the company and Ross, caused a notice to be published in various newspapers in Southern California that on October 25, 1949, they would sell to the highest bidder certain (designated) property which is listed in the inventory (attached to the complaint). On the date of the sale plaintiffs appeared and orally notified defendants and all persons present "of plaintiffs' lease" and the terms thereof, and that plaintiffs claimed ownership of the property advertised for sale and that those who purchased it would do so at their peril. Said defendants then announced that plaintiffs had no right in the property and that defendants would guarantee title. Defendants then proceeded to auction and deliver to 20 of the other defendants (specifically designated therein) certain items of the property (specifically designated therein.) At the time and place of the sale certain designated defendants converted all the property, then sold and delivered, to their own use to plaintiffs' damage in the sum of $57,120. Certain other items (foundation and retaining walls) have been rendered valueless through the severance and removal of other designated items (conveyor belt, bunker—steel construction, and motor) to plaintiffs' damage in the sum of $14,000; and other items (other foundations and retaining walls) have been rendered valueless by the severance and removal of other items (bin, motors, and machinery) to plaintiffs' damage in the sum of $9,500. While 18 defendants (specifically referred to) have not sold and delivered certain designated items listed in the inventory, they claim the right to do so and are attempting to do so. Therefore a controversy exists with reference to the rights of said defendants to sell those items. The defendants corporation and company have refused to deliver a deed "cancelling said lease" and conveying a merchantable title to said claims and have refused to deliver possession of said property to plaintiffs. Plaintiffs are informed and believe that the nine defendants who sold the property collected therefrom an aggregate sum of $25,000. Prior to the sale certain of the defendants resolved to liquidate the corporation and company and appointed defendant Ross their liquidating agent. Ross received the entire sum of $25,000 and still holds same, and has entered into a written contract with plaintiffs under which he has promised to retain possession of such funds until plaintiffs' claims are adjudicated. Defendants have not paid the $300 rental maturing November

1, 1949, nor any rental accruing since that time, and the corporation and company have not performed any of the promises they agreed to perform in said lease.

The lease, which was attached to the complaint, provided in part as follows: that upon violation of the lease by lessee, and its failure to remedy same within 15 days after the mailing of a notice to lessee by registered mail, the lease, at the option of lessor, shall end and all rights of lessee shall terminate, and lessee will immediately surrender possession of the claims to lessor; that waiver of any default shall not excuse other or subsequent defaults, and all waivers must be in writing signed by lessor; that "as long as LESSEE is not in default it shall have the right to remove all equipment, machinery and personal property placed by them on said claims and not permanently affixed to the real estate, same to be removed within thirty days from the termination of the lease. Any property not so removed shall become the property of the LESSOR. No buildings, underground track, pipe, ties, and timbers for permanent improvements shall be removed."

Defendants Ward, the corporation, the company and Ross demurred to said fourth amended complaint on the grounds that it failed to state a cause of action; several causes of action had been improperly united; there was a misjoinder of causes of action; and the complaint was uncertain in that it could not be ascertained in what manner plaintiffs had been damaged. The minute order states that the demurrer was sustained without leave to amend. In the recital in the judgment it is stated that the demurrer was submitted and thereafter was sustained, and "it appearing that plaintiffs did not desire a further opportunity to amend their complaint, the Court thereupon refused leave to Plaintiffs to amend." The judgment was that "Plaintiffs take nothing by this action and that said Defendants have and recover their costs herein, taxed at $14.50." Plaintiffs appealed from that judgment. They contended on appeal that the judgment was uncertain and that the complaint stated a single cause of action. The judgment was affirmed on appeal. (*Lamb* v. *Ward*, 101 Cal.App.2d 338 [225 P.2d 317].) The court held that there was no uncertainty in the judgment and stated that the complaint was a hopeless compilation in one count of seven separate and distinct causes of action.

With respect to appellants' contention that the former judgment is not a bar to the present action, they (appellants)

argue in effect that the said judgment was a judgment of dismissal and was not on the merits. A demurrer to the original complaint was sustained with leave to amend. Demurrers to the first and second amended complaints were ordered off calendar. A demurrer to the third amended complaint was sustained with leave to amend. A demurrer to the fourth amended complaint was sustained without leave to amend,— the reason for the refusal of leave to amend being that the plaintiffs did not desire a further opportunity to amend. The judgment thereupon entered was not one of dismissal but it was a judgment that ''Plaintiffs take nothing by this action.'' Under the circumstances here, where plaintiffs had filed four amended complaints and had refused a further opportunity to amend, that judgment was in effect a judgment that plaintiffs had had their day in court and that the controversy was determined. On the appeal from that judgment, it was stated in *Lamb* v. *Ward, supra,* at page 343, that after the ''demurrer had been sustained to the fourth successive amended complaint respondents were entitled to judgment.'' It was also stated therein, at page 344, that the complaint ''is now incurable unless this court should disregard the established rules with respect to the finality of judgments entered after a trial of issues at law.'' The decision on appeal therein was to the effect that the judgment of the trial court determined the controversy. The judgment having become final, it is a bar to a subsequent action between the same parties involving the same subject matter. The two plaintiffs and the 38 defendants in the former action (No. 567516) are the plaintiffs and the defendants in the present action. As found by the trial court, both complaints involved identical matters. Each complaint pertained to the severance and removal of the same property from the mining claims and sought a recovery of money by reason of the severance and removal. In the present case there is a purported cause of action for damages by reason of the decreased value of the mining claims allegedly resulting from the severance and removal of the same property from the mining claims, but it appears that in the former action plaintiffs sought all damages allegedly resulting to them by reason of such severance and removal. It was alleged in the former action that by reason of the severance and removal of certain machinery and equipment the foundations and retaining walls on the mining claims were damaged. It was alleged in the present

action that plaintiffs' damage by reason of the severance and removal of property from the mining claims was $118,935; and that plaintiffs' damage by reason of the decreased value of the mining claims was the same amount, $118,935. It therefore appears that the amount of alleged damages was the same, whether the damages were based upon the theory of alleged conversion of personal property or upon the theory of decreased value of the mining claims as a result of severing and removing property. Appellants state in their brief that, by reason of the difficulty in ascertaining the nature of "the fixtures (were they personal property or real property?)" they set up two counts—the first based upon the theory of conversion (of personal property), and the second on the theory of damages to real estate. By reason of the judgment in the former action, No. 567516, the matters pleaded in the present action are res judicata and said judgment is a bar to the present action.

As to the matter of a *retraxit*, the trial court found, as above stated, that the defendants herein paid to plaintiffs herein $600 in full settlement of another former action, No. 566571, and said former action was thereupon dismissed and plaintiffs thereby settled all causes of action set forth in the present complaint. The court concluded that the dismissal of said action upon the receipt of $600 by plaintiffs constituted a *retraxit*. By reason of the above conclusion, regarding res judicata, it is not necessary to discuss appellants' further contention that there was no *retraxit*.

The judgment is affirmed.

Shinn, P. J., concurred.

Vallée, J., deeming himself disqualified, did not participate.

Appellants' petition for a hearing by the Supreme Court was denied November 12, 1953.