[Civ. No. 17733.   Second Dist., Div. Three.   Jan. 25, 1951.]

E. B. TRICKEY, Appellant, v. CITY OF LONG BEACH
et al., Respondents.

Matot, Gabrielson & Manley, Harry B. Seelig and Shinberg & Shinberg for Appellant.

Irving M. Smith, City Attorney, Howland M. Reid, Assistant City Attorney, Atlee S. Arnold and Dewey L. Strickler, Deputy City Attorneys, for Respondents.

VALLÉE, J.—Appeal by petitioner from a judgment (denominated judgment and order) denying him any relief, entered on the hearing of an order to show cause for a preliminary injunction in an action for a writ of mandate and an injunction.

Petitioner, a taxpayer and resident of the city of Long Beach, filed a "Petition For Writ of Mandate" against the city of Long Beach, the members of the city council, the members of the board of harbor commissioners, the city treasurer, the city auditor, the city attorney, and two of his deputies, seeking, among other things, to compel them to "cease" transferring funds from the city's "Gas Revenue Fund" to its "General Purpose Fund" and to retransfer funds from its "General Purpose Fund" to the "Gas Revenue Fund," on the ground that they were trust funds which could be used only for harbor purposes and not for general municipal purposes.

The petition is predicated upon the decision in *City of Long Beach* v. *Morse,* 31 Cal.2d 254 [188 P.2d 17],[1] rendered December 30, 1947, which is made a part of the petition by reference. The petition alleges that after the rendition of the Morse decision the defendants "conspired to divert and appropriate funds, the proceeds of said so-called tideland oil wells, of the City of Long Beach, in disregard of the rule announced in said decision, and ever since said time have continued and have pursued a policy of causing said public funds of the City of Long Beach to be diverted and appropriated in contravention of the law established by said decision in this, that the defendants, the Board of Harbor Commissioners of said City of Long Beach have caused the dry gas from tidelands to be turned over to the City Gas Department of the City of Long Beach and said gas has been sold at a profit to the citizens of the City of Long Beach, and the proceeds of the sale of this gas, which is part of the trust funds of said City, have been transferred from said Gas Department to the General Purpose Fund of the City of Long Beach at the following times and places [amounts], as follows, to-wit: January 31, 1948, the sum of $55,000; Junes 30, 1948, the sum of $23,500; Junes 30, 1948, the sum of $26,250.05; June 30, 1948, the sum of $2,850,000; June 30, 1949, the sum of $4,600,000''; that all such transfers of funds were done by resolution of the City Council of the City of

---

[1]The city of Long Beach sought a writ of mandate to compel its treasurer to transfer revenue derived from the production of oil and gas from tidelands and submerged lands claimed by the city under legislative grants from the State of California, from its "Harbor Revenue Fund" to its "Public Improvement Fund," under a charter amendment providing for the transfer of 25 per cent of the fund in question to the "Public Improvement Fund." The city treasurer refused to make the transfer on the ground it would be in violation of the charter provision because the revenue transferred to the "Public Improvement Fund" would be used for general municipal improvements unconnected with the purposes and uses provided for in the grants. It was conceded that if the transfer were made, the money would be used for general municipal improvements not limited to the purposes specified in the legislative grants. In denying the petition, the court held that the revenue derived from the production of oil and gas from the tidelands and submerged lands were trust funds subject to the trust under which the city held the lands, and, being so, could "not be used for any purposes other than those specified in the trust conveyance under which the city claims title to the lands."

In a footnote the court stated "The United States is not a party to this proceeding and the extent to which the State of California could validly grant to the City of Long Beach any right in the lands in question under the decision of the United States Supreme Court in *United States* v. *California,* 332 U.S. 19 [67 S.Ct. 1658, 1664, 91 L.Ed. 1889], is not in issue."

Long Beach, concurred in by all the other defendants, notwithstanding the fact that defendants knew that they could not be used for general municipal purposes but were a trust fund for harbor purposes as determined by the Supreme Court in the Morse case; that the transfer of these funds "was in violation of the terms of the trust under which the City of Long Beach holds title to the lands . . . and that the defendants . . . had no right, power or authority whatever to make said transfers and expenditures . . . and any orders or directions of said City Officials . . . purportedly authorizing said transfers and expenditures . . . was in violation of their oath of office and constitutes malfeasance on the part of the defendants . . ."

The petition prayed that an alternative writ of mandate be issued requiring defendants to immediately "desist" from transferring or diverting "trust funds" into its "General Purpose Fund" for general municipal purposes "or for any purposes whatever excepting for harbor purposes in furtherance of the terms of the trust under which it holds title to certain tidelands which were the subject of the mandate proceedings" in the Morse case; to retransfer all funds heretofore paid into the "General Purpose Fund" and, in the event of any deficiency, to repay the amount which had been unlawfully transferred from the "Gas Revenue Fund" until such time as the trust has been fully restored and "all funds which properly belong to said trust fund placed in the proper fund and held exclusively for the purpose of said trust." Although the petition is denominated one for writ of mandate, it is obvious that it seeks injunctive relief as well.

An order issued, requiring defendants to show cause why they should not be restrained from transferring from the "Gas Revenue Fund" to the "General Purpose Fund" "monies derived from the proceeds or income from the tidelands," to be used for general municipal purposes or any purposes except those set forth in the trust conveyance and under which the city holds title to the tidelands. Defendants filed a return to the order to show cause. The return, among other matters, challenged the legal capacity of the petitioner to maintain the action and the sufficiency of the petition, and alleged that there was another action pending between the same parties for the same cause. Attached were an affidavit of the superintendent of the Long Beach municipal gas department and a specimen contract under which the city, through its board of harbor commissioners, sells the natural

gas derived from wells located on the tidelands and submerged lands and retains the "resulting dry gas."

The affidavit and the specimen contract reveal the following:

The municipal gas department was created in 1923. The municipal gas system serves the entire area of the city of Long Beach with both domestic and industrial gas for fuel purposes. It is self-supporting, and the gas rate structure is maintained at a sufficiently high level to insure a substantial surplus profit. Since 1932 substantial sums of surplus moneys have been transferred from the gas department fund to other city funds to meet some of the general expenses of the city. The gas which the municipal gas department distributes to its customers is obtained from several sources. Since 1939, the city has purchased "considerable" gas from independent suppliers and, in addition, by virtue of various contracts entered into between it and purchasers of natural gas produced from wells located on city-owned land and from wells located on tidelands granted to the city by the state, it has had "available" large quantities of dry gas. "[A]s of June 30, 1949, the City had the right to receive a quantity of dry gas equal to the resulting surplus dry gas derived from processing of the natural gas processed by the purchasers of the natural gas from 574 wells in the harbor area," of which 506 are located on the tidelands.

Under its contracts for the sale of natural gas derived from wells located on the tidelands, the purchaser pays the city 62 per cent of the "gross proceeds derived . . . from the sale by it of natural gasoline, liquefied gas and other products, excepting 'resulting dry gas.'" Under the contracts,[2] the

---

[2] "16. The dry gas resulting from the treatment of the natural gas hereunder and remaining after [various deductions] . . . shall be deemed 'resulting dry gas' hereunder and shall be available for sale by Purchaser (except as hereinafter provided), and Purchaser agrees to use its best efforts to sell, at the highest price obtainable, all of said 'resulting dry gas', or any portion thereof, which the City of Long Beach does not elect to take in kind, as herein provided. In the event of the sale by Purchaser of all or any portion of said 'resulting dry gas', Purchaser agrees to pay to Board, or as directed in writing by said Board, as additional compensation for said natural gas purchased by Purchaser hereunder, seventy-five per cent (75%) of the total gross proceeds derived by Purchaser from such sale of said 'resulting dry gas.' . . .

"17. It is further understood and agreed that, notwithstanding any other provision in this agreement, the City of Long Beach shall have the right, from time to time hereafter, to elect to take, without charge to it, all or any portion of the 'resulting dry gas', in kind, obtained from the treatment of the natural gas hereunder. . . . provided, however, that it is understood and agreed that by the execution of this agreement said City does elect to take, until further notice to said Purchaser, as herein-

city elects to take all of the "resulting dry gas" (which is that gas remaining after deducting unavoidable plant loss, unavoidable shrinkage, plant fuel reasonably used only in the collection of the natural gas and in the extraction of gasoline and other products from the natural gas, and the dry gas returned to the respective parcels from which the natural gas is recovered); in the event the city does not elect to take all, or any portion, of the "resulting dry gas," the purchaser is entitled to sell it and, as "additional compensation for said natural gas purchased," is required to pay the city therefor 75 per cent of the total gross proceeds derived from the sale. Under the contracts, monthly written reports are required to be filed by the purchaser with the board of harbor commissioners, showing the amount of natural gas received, the amount of natural gas sold and the proceeds derived from such sales, the proportion of gasoline extracted from the natural gas, the "disposition of the total dry gas derived from the natural gas received by Purchaser from the wells on each of said parcels of land . . . (separately, by parcels)," and a statement of the total compensation, both in cash and in kind, due under the contract.

After hearing arguments on the order to show cause, the court entered a judgment reading in part, "the Court . . . finds that an injunction and writ of mandate should not be granted for the reason that the case of *City of Long Beach* v. *Morse,* 31 Cal.2d 254 [188 P.2d 17] is not applicable to the relief sought herein and for the further reason that there is now another action pending entitled '*Albert* v. *Abrams, et al.,* vs. *The City of Long Beach, et al.,*' in the Superior Court of the State of California, being case No. 546,583 in which the City of Long Beach is also a defendant and which seeks the same relief as that applied for herein. Therefore, the Writ of Mandate applied for by petitioner is denied, and the Court

above provided, all of the 'resulting dry gas' obtained from the treatment of the natural gas sold and delivered to Purchaser hereunder. Purchaser agrees to deliver all of said 'resulting dry gas' which said City so elects to take . . . in kind, to City as the Gas Department of said City shall require the same, such deliveries to be made through and by means of City's facilities at the plant or plants of Purchaser used for the treatment of the natural gas hereunder. All such deliveries of 'resulting dry gas' to City shall be made by Purchaser in substantially even daily quantities, at a substantially uniform pressure of not less than thirty (30) pounds per square inch gauge pressure at the meters of the Gas Department of City to be installed on the pipe line through which such delivery is made on the lands where said plant or plants of Purchaser is or are located.''

hereby concludes as a final judgment herein that petitioner is not entitled to the relief sought,'' from which judgment petitioner appeals.

▮ In the absence of a general demurrer in return to an order to show cause for a preliminary injunction, the question for decision on the hearing is whether, balancing the respective equities of the parties, the defendant should or should not be restrained pendente lite from exercising rights claimed by him. In such a case the granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. All questions decided on the hearing of the order to show cause are open for review on the final hearing. (*Marsh Bros. & Gardenier* v. *United States Fidelity & G. Co.*, 97 Cal.App. 474, 478 [275 P. 886].) Defendants did not demur to the complaint. In view of the fact that a final judgment was entered on the hearing of the order to show cause, it would appear that the court treated the return as a demurrer.

The ''Gas Revenue Fund'' was created by amendment in 1937 of the charter of the city of Long Beach. (Stats. 1937, pp. 2924 et seq.) All moneys received from the use, sale or distribution of gas in connection with the operation of the gas department are deposited with the city treasurer to the credit of the ''Gas Revenue Fund.'' The moneys in this fund may only be used to defray the expenses of operating the gas department, to pay the principal and interest on all outstanding municipal bonds issued, or to be issued, by the city for or on account of the gas plant and system of supply and distribution, and for the establishment of a fund to be known as the ''Gas Reserve Fund,'' the latter fund to be used for such costs or expenses of operation as have not been provided for in the budget of the city or gas department. Surplus moneys in the ''Gas Revenue Fund'' may, by a vote of two-thirds of the city council, be used for general expenses of the city. (Stats. 1937, p. 2924 et seq.; Charter of Long Beach, § 215-a.) It is alleged, and not denied, that the ''General Purpose Fund'' is used for the payment of general expenses of the city.

Prior to 1939, the State of California by grants to the city of Long Beach transferred all of its right, title and interest in and to the tidelands and submerged lands within the boundaries of that city, in trust for certain uses and purposes connected with the development of Long Beach Harbor. (Stats. 1911, p. 1304, as amended in 1925 (Stats. 1925, p. 235) and

in 1935 (Stats. 1935, p. 793); 2 Deering's Gen. Laws, 1944, Act 4401; *City of Long Beach* v. *Marshall*, 11 Cal.2d 609 [82 P.2d 362].) By virtue of these grants, the city is empowered to drill for, extract, and dispose of any oil, gas, and other hydrocarbon substances discovered on these tidelands and submerged lands owned by it. (*City of Long Beach* v. *Marshall, supra.*) All moneys derived by the city from the sale of oil, gas, and other hydrocarbon substances produced from these lands are trust funds and can be used only in furtherance of the trust purposes and not for general municipal purposes unconnected with the trust purposes. (*City of Long Beach* v. *Morse*, 31 Cal.2d 254, 257 [188 P.2d 17].) All money derived by the city from the development of oil, gas, and other hydrocarbon substances from lands acquired by grant from the State of California must be paid into one of three funds: (1) if bonds are outstanding for harbor purposes, not less than 50 per cent derived from such lands in the harbor district must be paid into the "Harbor Bond Redemption and Interest Fund" and used exclusively for the payment of principal and interest on such bonds; (2) the balance must be paid into the "Harbor Revenue Fund" (Stats. 1937, p. 2939, as amended by Stats. 1943, p. 3097, Stats. 1949, p. 2855); (3) money derived from such lands not in the harbor district must be paid into the "Tideland Oil Fund" (Stats. 2d Ex. Sess. 1946, p. 367, as amended by Stats. 1949, pp. 2855, 2857.) Money in the "Harbor Revenue Fund" and in the "Tideland Oil Fund" may only be used in furtherance of the trust purposes. (Stats. 1931, p. 2807, § 229-d; Stats. 2d Ex. Sess. 1946, p. 367, as amended by Stats. 1949, pp. 2855, 2857; *City of Long Beach* v. *Morse, supra,* 31 Cal.2d 254.)

█ Accordingly any revenues derived from the sale of dry gas processed from natural gas derived from oil wells located on tidelands and submerged lands granted by the state are impressed with the trust and are trust funds. That the city recognizes this fact is evident from its contracts whereby the purchasers of natural gas derived from these lands, in the event they sell the dry gas, are required to pay, as additional compensation therefor, 75 per cent of the gross proceeds derived from sales of such dry gas, which sums must be paid into the "Harbor Revenue Fund" or into the "Tideland Oil Fund," as the case may be, to be used in furtherance of the trust purposes. The fact that under its contracts the city elects to take all of the dry gas processed from natural gas derived from the tidelands and submerged

lands, in lieu of receiving a percentage of any sales of such dry gas by the purchaser, does not alter the situation. *A fortiori,* if the city, in turn, as it does, sells this dry gas and receives revenue therefrom, such revenue is likewise impressed with the trust and becomes trust funds, which may not be used for general municipal purposes, but only in furtherance of trust purposes. Although respondent contends otherwise, it is obvious from the specimen contract before us that the amount of dry gas obtained from the natural gas from tidelands and submerged lands and allocated to the city's gas department is determinable, and the money paid therefor is traceable and capable of segregation.

Respondent challenges the legal capacity of petitioner to maintain the instant proceeding, arguing in effect that since these funds are claimed to be impressed with a public trust, any enforcement thereof must be by the state. ▮ An action to obtain a judgment restraining and preventing any illegal expenditure of the funds of a city may be maintained against an officer, agent, or other person acting in its behalf by a citizen resident therein who has within one year before the commencement of the action paid a tax to such city. (Code Civ. Proc., § 526a; *Mines* v. *Del Valle,* 201 Cal. 273 [257 P. 530] ; *Osburn* v. *Stone,* 170 Cal. 480 [150 P. 367] ; *Wirin* v. *Horrall,* 85 Cal.App.2d 497, 504 [193 P.2d 470] ; *Brown* v. *Boyd,* 33 Cal.App.2d 416, 423 [91 P.2d 926]. See *Fox* v. *City of Pasadena,* 9 Cir., 78 F.2d 948.) ▮ The taxpayers of the city are in equity the owners of the trust fund. The officials of the city can only hold and apply moneys derived from oil and gas produced from tidelands and submerged lands to the legitimate purposes of the trust, and a taxpayer has a sufficient interest to restrain the officials from making unlawful use of the trust funds and to compel the retransfer of trust funds unlawfully transferred. (6 McQuillan, Municipal Corporations, 2d ed. revised, § 2761.) Petitioner is not seeking to enforce a public trust. The object of his action is merely to prevent the defendants from transferring trust funds in the "Gas Revenue Fund" to the "General Purpose Fund" to be used for general municipal purposes in violation of the terms of the trust and to compel them to retransfer trust funds heretofore illegally paid into the "General Purpose Fund." Appellant makes no point that the transfers were illegal because irregular in that they were not made in conformity with the provisions of the charter relating to funds collected by the gas department;

the basis of his action is that some of the moneys in the "Gas Revenue Fund" are trust funds which can be used only for harbor purposes. This being so, any expenditure of the trust funds for general municipal purposes would be illegal in the sense that it is, and would be, a violation of the trust. (*Cf. Mulvey* v. *Wangenheim*, 23 Cal.App. 268 [137 P. 1106].)

Predicated on the fact that the petition alleges that the money transferred to the "General Purpose Fund" was expended for general municipal purposes, respondent argues: "If it be true that said money so transferred was expended for general municipal purposes, such money would otherwise have been raised by taxation and appellant as a taxpayer would clearly not be injured but would, in fact, be benefited thereby," therefore, he does not have a cause of action. This argument is answered in *Mines* v. *Del Valle, supra,* 201 Cal. 273, where the court said, page 279: "If money belonging to the city is illegally paid out by its officers, the inevitable result would be a detriment to the taxpayers of said city, with a corresponding increase, either directly or indirectly, of the burden of taxation upon the property owners therein. ▮ The fact that the funds unlawfully withdrawn from the public treasury were not raised by direct taxation, but represented receipts from a public utility operated by the city, would not change this result. . . . Must a taxpayer, when he sees the money of the city being unlawfully applied and paid out for unlawful purposes, sit idly by, and is he without right either to stay the illegal expenditures or recover the same on behalf of the city after they are made, simply because he cannot show that he thereby sustained some special damage? This court has repeatedly held that he is not so helpless (*Crowe* v. *Boyle*, 184 Cal. 117 [193 P. 111], and citations found on page 152 thereof)."

Appellant contends that the issues in *Abrams* v. *City of Long Beach*, which the trial court found "seeks the same relief as that applied for herein," are not substantially similar to those involved here. We agree. ▮ In order that a second action be abated because of the pendency of a prior action, it is elementary that the issues in the two actions must be substantially the same. In determining this question, the test applied is whether a final judgment in the first action could be pleaded in bar as a former adjudication. (*Lord* v. *Garland*, 27 Cal.2d 840, 848 [168 P.2d 5] ; 1 Cal.Jur. 28, § 8.) With this test in mind, it appears that the issues in the Abrams case are not the same as in the instant case

and that if a judgment were rendered in that case it could not be pleaded in bar as a former adjudication.

The Abrams case seeks injunctive relief on behalf of taxpayers. The first count seeks to enjoin the city of Long Beach, the city council, the board of harbor commissioners, the auditor and the treasurer from expending *any* funds received as royalties from the development of oil, gas, and other hydrocarbon substances underlying the tidelands and submerged lands granted the city by the state on the ground that defendants have no right, title or interest in the lands and the minerals lying thereunder because the United States is possessed of paramount rights. The second count seeks to enjoin "the defendants" from enclosing public lands belonging to the United States because they are trespassers and are acting in violation of an act of Congress. The third count charges the board of harbor commissioners with "misusing and misappropriating" the funds of the city, and seeks an accounting "of all the books of the Harbor Commissioners" on the ground that the "Board of Harbor Commissioners is diverting the wet gas derived from the operation of said property to the Wilmington Gas Treating Plant and then causing the same to be sold in the City of Long Beach and without accounting for said funds in the Harbor Department of the City of Long Beach, but permitting said funds for the general account of the City of Long Beach." The complaint prays judgment (1) that the city of Long Beach, the city council, the board of harbor commissioners, the auditor, and the treasurer be enjoined from expending *any* funds received from the operation of said lands "for any purposes whatsoever"; (2) that "defendants" be permanently enjoined from drilling, producing or selling any products of any kind extracted from said lands; (3) that the board of harbor commissioners be required to make a full accounting of all moneys received from the illegal operations of the city and that the funds be permanently impounded.

That the two actions are totally dissimilar is at once apparent. The third count of the Abrams action, relied on by respondents as supporting the trial court's finding, charges that the board of harbor commissioners is diverting certain *wet* gas (*natural* gas) and causing it to be sold in the city "without accounting for the funds." It seeks an accounting only from the board of harbor commissioners. The present proceeding seeks (1) to enjoin "the defendants" (including the city council, city treasurer, and auditor) from transferring

certain trust funds in the "Gas Revenue Fund," derived from the sale of *dry* gas, to the "General Purpose Fund" to be used for general municipal purposes unconnected with the trust purposes for which said funds may be used, and (2) the retransferance and restoration of such funds so transferred and that such funds "[be] placed in the proper fund and [be] held exclusively for the purpose of said trust." The court, therefore, erred in its finding that the present proceeding should be abated by reason of the pendency of the Abrams case.

■ Respondents contend that the auditor, the city attorney, assistant city attorney, and deputy city attorney were improperly joined as parties defendant. Among the duties of the auditor are to audit the funds of the city and if he discovers any irregularities to file a written report thereof; all demands and claims must be presented to and audited by him and he must satisfy himself "whether the payment thereof is authorized by law"; if any demand or claim is payable out of a fund under the jurisdiction of any board and he disapproves the same, it must be transmitted to such board, together with the auditor's reasons for disapproval. (Stats. 1937, pp. 2931-2934.) It is obvious that the auditor is a proper party defendant. ■ We have not been referred to any statute, nor have we found any, prescribing any duty of the city attorney or his deputies with respect to the transfer or retransfer of the moneys in question. The charter provisions fixing the duties of the city attorney do not prescribe any such duty. (Stats. 1921, p. 2115.) The city attorney, the assistant city attorney and the deputy city attorney are not proper parties defendant.

The judgment, insofar as it denies plaintiff any relief against the city attorney, the assistant city attorney and the deputy city attorney, is affirmed. In all other respects it is reversed for further proceedings not inconsistent with the views herein expressed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 14, 1951, and respondents' petition for a hearing by the Supreme Court was denied March 22, 1951. Schauer, J., and Spence, J., voted for a hearing.