[Civ. No. 25008.   Second Dist., Div. Three.   Feb. 20, 1962.]

CARL WHITSON, Plaintiff and Appellant, v. CITY OF LONG BEACH et al., Defendants and Respondents.

William T. Pillsbury for Appellant.

Stanley Mosk, Attorney General, John F. Hassler, Deputy Attorney General, Gerald Desmond, City Attorney, Harold A. Lingle, Deputy City Attorney, Musick, Peeler & Garrett, Gerald G. Kelly, Jesse R. O'Malley and Frederick B. Warder, Jr., for Defendants and Respondents.

FORD, J.—This is an appeal from a judgment of dismissal entered after demurrers of certain defendants, directed to the second amended complaint, were sustained. The demurrer of defendant Long Beach Oil Development Company was

sustained as to each cause of action without leave to amend. The respective demurrers of defendants City of Long Beach and its auditor and defendant State of California were sustained as to the first cause of action but leave was granted to the plaintiff to amend that cause of action; as to the other causes of action, each demurrer was sustained without leave to amend. In the absence of permission to amend other causes of action, the plaintiff expressly declined to avail himself of the leave to replead the first cause of action.

The plaintiff proceeded in propria persona in the superior court. The several complaints filed by him were concerned to a large extent with the respective rights of the State of California and the City of Long Beach in and to the oil and gas revenue from certain tidelands and submerged lands. A chronicle of problems arising out of this subject which have heretofore been presented to the Supreme Court of California in other cases is found in *People* v. *City of Long Beach*, 51 Cal.2d 875 [338 P.2d 177], at pages 877-879.[1] (See also *Gabrielson* v. *City of Long Beach*, 56 Cal.2d 224, 225-228 [14 Cal.Rptr. 651, 363 P.2d 883].)

A résumé of the allegations of the second amended complaint will be stated. The plaintiff is a resident, property owner and taxpayer of the City of Long Beach. He "gave due

---

[1] "In 1911, the State of California granted to the city of Long Beach the tidelands and submerged lands lying within the city's boundaries in trust for certain uses and purposes connected with the development of Long Beach Harbor. (Stats. 1911, ch. 676, p. 1304.) The original grant stated 'That said lands shall be used by said city and by its successors, solely for the establishment, improvement and conduct of a harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays, and other utilities, structures and appliances necessary or convenient for the promotion and accommodation of commerce and navigation, and said city, or its successors, shall not, at any time, grant, convey, give or alien said lands, or any part thereof, to any individual, firm or corporation for any purpose whatsoever; *provided*, that said city, or its successors, may grant franchises thereon, for limited periods, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, for purposes consistent with the trusts upon which said lands are held by the State of California and with the requirements of commerce or navigation at said harbor. . . .' (Stats. 1911, ch. 676, p. 1305.) The terms of the original trust were amended by the Legislature in 1925 (Stats. 1925, ch. 102, pp. 235-236) and 1935. (Stats. 1935, ch. 158, p. 793-795.)

"Following the discovery of oil under the tidelands in 1937, it was determined in *City of Long Beach* v. *Marshall*, 11 Cal.2d 609 [82 P.2d 362], that the city had the right to produce oil and gas from these lands, and in *City of Long Beach* v. *Morse*, 31 Cal.2d 254 [188 P.2d 17], that the oil and gas revenue could be used only for trust purposes. In 1951, the Legislature found that approximately 50 per cent of the oil and gas revenue was no longer needed for trust purposes and declared such

notice to the City Council to institute this action to protect the rights of the taxpayers and citizens," but such "notice and demand was refused."

In the first cause of action it is alleged that defendant Long Beach Oil Development Company "owns or claims to own an interest in oil and gas rights in or to the Tidelands or Submerged lands, within the city . . . by reason of leases, contracts or assignments from the city." For several years, the city and the Long Beach Oil Development Company have been producing oil and natural gas from the tidelands and submerged lands within the boundary lines of the city, and "have been using all or part of the funds derived therefrom for commerce, navigation and fisheries on said lands." Under the provisions of legislation described as "Chapter 29, Extra Session laws 1956, or A. B. 77,"[2] the Attorney General and

part of the revenue free from the public trust for navigation, commerce, and fisheries. (Stats. 1951, ch. 915, pp. 2444-2445.) In *Mallon* v. *City of Long Beach*, 44 Cal.2d 199 [282 P.2d 481], it was determined that the state, not the city, was entitled to the revenue freed from the trust by its partial revocation.

"Thereafter the state brought an action against the city to recover the funds to which it was entitled under the decision in the *Mallon* case. In 1956 the Legislature took note of this litigation and concluded that the public interest would best be served by its prompt settlement. Accordingly, it authorized a settlement dividing the oil and gas revenue between the state and the city, and provided that the latter's share should continue to be held in trust and expended for trust purposes. It set forth a nonexclusive list of trust purposes that were declared to be matters of state, as distinguished from local, interest and benefit, and it expressed its belief 'that the Attorney General and said city should seek judicial determinations further defining said city's rights and duties in the premises.' (Stats. 1st Ex. Sess. 1956, ch. 29.) Pursuant to this legislation a consent decree was entered settling the main points of dispute between the state and the city, but the trial court reserved jurisdiction to determine whether given proposed expenditures were or were not within the power of the city to make as trustee in possession of its share of the oil and gas revenue."

[2]Chapter 29, Statutes of 1956, First Extraordinary Session, is in part as follows: "Sec. 2. It is hereby found and determined: (a) In that *certain act* . . . *approved* June 6, 1951, the Legislature declared fifty per centum (50%) of all revenue theretofore derived and unexpended, and thereafter to be derived, by the City of Long Beach from oil, gas and other hydrocarbon substances other than dry gas produced from the Long Beach tidelands, and all of the revenue theretofore and thereafter derived from dry gas from said tidelands, to be free from the public trust for navigation, commerce and fisheries and from such uses, trusts, conditions and restrictions as were imposed by said acts of 1911, 1925 and 1935. On April 5, 1955, in the case of *Mallon* v. *City of Long Beach*, 44 Cal.2d 199 [282 P.2d 481], the Supreme Court of California held that said act of 1951 effected a partial revocation of the trust created by said acts of 1911, 1925 and 1935 and resulted in a reversion to the State of California of the sums thus released from the trust, the City of Long Beach therefore holding said sums upon a resulting trust in favor of

the City Attorney of Long Beach entered into "various stipulations and agreement [*sic*] whereby the defendant City of Long Beach attempted to pay to, gave to or turned over to the State Investment Fund or to the State of California, many millions of dollars of oil and gas tidelands funds, which funds were and are the exclusive property of the City of Long Beach and the Taxpayers thereof including plaintiff." The

---

the State. Said *Mallon* case was thereafter remanded to the superior court for further proceedings and is now pending in said court awaiting trial on the merits or other disposition. Following said *Mallon* decision, the State instituted litigation against said city with the objective of recovering those moneys and assets declared by the Supreme Court to be held in resulting trust, to recover judgment for the amount of such moneys and assets as had been theretofore spent by said city and to enjoin the expenditure of other Long Beach tideland hydrocarbon revenues for purposes not authorized by said acts of 1911, 1925 and 1935. As a result of stipulations between the Attorney General and the City of Long Beach, there have been impounded in the hands of said city securities at par and cash aggregating approximately one hundred eleven million dollars ($111,000,000), subject to the additional impoundment of certain future income from oil and dry gas, all of said impounded assets to be held intact by said city pending the final determination of said litigation. The City of Long Beach asserts and, in the absence of a compromise settlement and adjustment of the claims of the State against said city, intends to maintain and to litigate various defenses against said claims. In addition, said city claims certain credits or offsets against the claims of the State by reason of the expenditure of tideland hydrocarbon revenues for protective and remedial works occasioned by land subsidence and by reason of general tax revenues expended by said city upon the Long Beach tidelands. Under existing circumstances, disposition of said impounded funds and determination of the respective rights of the State and the city in the premises cannot be made except by extensive, complicated and time-consuming litigation, possibly including a lengthy court-supervised accounting, while the impounded funds will remain in a condition of enforced idleness. The continuance of the existing controversies between the State and the City of Long Beach, as well as the enforced idleness of the impounded funds, is contrary to the best interests of the people of this State, including the inhabitants of the City of Long Beach. A purpose of state-wide interest and benefit will be served by the determination of the respective rights and interests of the city and the State in and to past and future hydrocarbon revenues derived from the Long Beach tidelands. Such determination will so fix and clarify the respective entitlement of the State and the city as to permit the early termination of the pending litigation by means of stipulations between the State and city and, so far as necessary or appropriate, through the entry of court orders, decrees and judgments. Such a disposition of the litigation will permit early liberation and utilization of the impounded sums for urgently needed public purposes and will avoid the public detriment incident to protracted litigation between the State and one of its major municipalities. . . .

"(d) It is in the interest of the people of this State, including the inhabitants of the City of Long Beach, to declare by this act the amount of oil and dry gas revenue received or held by said city on and before January 31, 1956, for the use and benefit of the State of California free from the public trust for navigation, commerce and fisheries and

plaintiff alleges that such legislation is ''unconstitutional and void'' and ''attempts to take property and property rights of plaintiff without due process of law.'' He further alleges that there exists a ''controversy of a legal nature between the parties herein, which controversy is ripe for determination.''

The second cause of action, after incorporating by refer-

from such uses, trusts, conditions and restrictions as were imposed by the acts of 1911, 1925 and 1935 heretofore referred to, irrespective of these uncertainties, but such declaration should not preclude appropriate resolution, by judicial determination or otherwise, of these uncertainties for the purpose of determining revenues to be accounted for by said city after January 31, 1956.

''The total amount of oil revenue and dry gas revenue received or held by the City of Long Beach for the use and benefit of the State of California free from the public trust for navigation, commerce and fisheries and from such uses, trusts, conditions and restrictions as were imposed by the acts of 1911, 1925 and 1935 heretofore referred to, to and including January 31, 1956, is hereby found to be and fixed at the sum of one hundred twenty million dollars ($120,000,000).

''Sec. 3. The Attorney General and the City of Long Beach are hereby authorized to enter into an appropriate stipulation or stipulations as may be necessary to finally determine any and all claims, demands, or causes of action as between the City of Long Beach and the State of California and arising out of, in connection with, or seeking to enforce any obligation of the City of Long Beach to account for or to pay oil revenue and dry gas revenue to or for the benefit of the State of California under this act or the acts of 1911, 1925 and 1935 as modified by the act of 1951 and by this act and for such other purposes as may be authorized or required by this act. In addition to the provisions required by this act, the stipulation may provide for other matters necessary to determine such claims, demands, or causes of action. The stipulation shall provide that the City of Long Beach shall pay the amount agreed upon in the stipulation, which shall in no case be less than one hundred twenty million dollars ($120,000,000), to the State Controller, together with interest and other increment from investments and deposits thereof received by said city between February 1, 1956, and the date of payment. Said payment shall be made in the form and manner and at the time hereinafter prescribed. Said payment shall be deposited in the State Treasury.

''Sec. 4. . . . (c) The stipulation shall provide that said payment shall be completed within sixty (60) days after the entry of a court decree or judgment so ordering, or within such reasonable extension of time thereafter as may be permitted by the court. . . .

''Sec. 9. Any decree or judgment entered on the stipulation provided for in this act shall be final as to any and all claims, demands or causes of action as between the City of Long Beach and the State of California and arising out of, in connection with, or seeking to enforce any obligation of the City of Long Beach to account for or to pay oil revenue and dry gas revenue to or for the benefit of the State of California under this act or any of the aforesaid acts, which claims, demands or causes of action accrued on or before January 31, 1956; . . .

''Sec. 12. All payments into the State Treasury pursuant to this act, any stipulation provided for in this act, or any judgment entered on such stipulation shall be credited to the Investment Fund, which fund is hereby established in the State Treasury, but no portion of such fund shall be expended unless and until specifically appropriated by the Legislature. . . .''

ence the allegations of the first cause of action, alleges that the State of California is "attempting to put in force A. B. 1062, which attempts to amend Chapter 7, Part 6 of Division 6 of the Water Code[3] by transferring all of the moneys and funds, which were derived from the sale of oil and gas from the Tidelands in the City of Long Beach . . . to a Special Water Fund from the Investment Fund of the State." It is further alleged that such funds "are to be used exclusively for a water project or the purchase of land for right-of-way for water ways in northern California . . . [and] none of said money turned over to the State of California is being used for Commerce, Navigation or Fisheries." The claim of the plaintiff is stated to be that "if the defendant State of California is entitled to any of the said funds, then it is so entitled by reason of its Trust relation and ownership for Commerce, navigation and fisheries, to be used exclusively for such purposes upon the lands from which the oil and gas is produced." It is alleged that the city or its auditor should be enjoined from paying to the State of California "any sum or sums of oil and gas funds," which funds the State of California asserts it is entitled to spend for "such water purposes."

The third cause of action incorporates by reference all of the allegations of the first two causes of action. It is further alleged that the city owns oil-producing lands which "are so situated that it has been believed that said lands are . . . 'uplands.'" Such lands are apart from those upon which the operations of the Long Beach Oil Development Company are conducted. The funds received by the city therefrom have been used "to pay the interest on and retire city bonds and have not been used for commerce, navigation and fisheries as have funds from the tidelands." It is alleged that "recently" the State of California made demands upon the city for an accounting of funds derived from such source. It is also alleged as follows: "The defendant City of Long Beach will agree

---

[3]Section 12911 of the Water Code (added in 1959) is as follows: "The Investment Fund in the State Treasury is hereby abolished. Upon the effective date of this chapter, the Controller shall transfer all resources of the Investment Fund to the California Water Fund. All references in any law to the Investment Fund shall hereafter be deemed to refer to the California Water Fund."

Section 12912 (added in 1959) is in part as follows: "There shall be deposited in the California Water Fund: . . . (d) All revenues received by the State pursuant to the provisions of Chapter 29, Statutes of 1956, First Extraordinary Session . . ."

to pay and will attempt to pay such amounts and payments as demanded by the State of California; and will attempt to enter into some kind of a compromise, settlement or stipulation to pay other future large sums of money unless the payment thereof is enjoined by the court. The said sum or sums will be placed by the State of California in the above mentioned Special Water Fund and remove it [sic] outside of this court's jurisdiction.'' It is alleged that the state asserts that the lands are ''tide lands of inland waters and as such the State has some claim thereto or interest therein'' under the terms of the 1956 statute mentioned in the first cause of action.[4] The plaintiff states that notwithstanding the city's claim that such lands are ''uplands,'' ''the city will agree to some kind of a compromise settlement by which it will agree to pay to or attempt to pay to the State of California untold millions of dollars of said funds without any value received whatever.''

The fourth cause of action incorporates by reference all of the allegations of the preceding causes of action. It is further alleged as follows: ''That in 1911 the defendant State of California passed a statute, St. 1911 p. 1304 which was amended in 1925, St. 1925, p. 235, and which granted to the City of Long Beach all of the Tidelands and submerged lands within the boundaries. . . . In May of 1953 the Congress of the United States of America passed . . . the Submerged Lands Act. . . . This Act, granted and quitclaimed all of the Submerged lands involved herein direct [sic] to the City of Long Beach, California, as an assignee of the State of California. . . . Plaintiff claims that by reason of the Quitclaim Bill, as aforesaid, the City of Long Beach was granted a new title, in fee, by the United States of America, to all submerged lands within the city boundary lines; that said grant included the oil and gas rights; that the State of California has no interest in or control over any of such submerged lands. The State of California claims that . . . the later Submerged Lands Act (Quitclaim Bill) had no effect upon its title and rights in and to said land; and that the State of California still owns said lands or has some interests therein; has complete control and dominion over said lands. The defendant City of Long Beach claims that it owns the said submerged lands in fee, but in the same trust for Commerce, navigation and fisheries as it claimed before . . . the passage of the Submerged Lands

---

[4]See footnote 6 to this opinion.

Act. . . . There is a real and actual controversy of a legal nature involving adverse property rights of the parties herein. . . .''

The fifth cause of action incorporates by reference all of the preceding allegations of the complaint. It is further alleged that by the terms of the Submerged Lands Act the sum of one hundred seventy million dollars, which had been impounded during the course of the controversy between the State of California and the United States of America, was released to the City of Long Beach. It is also alleged as follows: ''Plaintiff claims that all of said impounded funds were the sole and exclusive funds and property of said City of Long Beach. . . . The State of California claims to own all or part of said funds with full right to control and spend said funds at will for any purpose. The City of Long Beach claims that the State of California owns a 50-50 share of said funds under the Compromise Bill [Chapter 29, Statutes of 1956, First Extraordinary Session]. . . . There is a real and actual controversy of a legal nature involving adverse property rights of the parties herein. . . .''

The sixth cause of action incorporates by reference all of the allegations of the preceding causes of action. Upon information and belief it is alleged that ''during all of the actions herein alleged'' a named person ''was a member or chairman of the Board of Harbor Commissioners of the defendant City of Long Beach; that at the same time and times he was also a stockholder, director and general counsel for the Hancock Oil Co.; . . . that it was the duty of . . . said Harbor Department official to vote upon and approve the aforesaid contract; that he did vote upon and approve said contract with the Long Beach Oil Development Co., which vote in effect was for his own benefit as well as the Hancock Oil Co. That at the time the Harbor Department of the City of Long Beach called for bids to drill oil wells and develop the oil and gas rights on [certain parcels] . . . [the plaintiff] submitted the lowest and best bid. . . . That defendant Long Beach Oil Development Company . . . was organized and incorporated for the one and only purpose of bidding upon and securing the contract to develop the oil and gas on said parcels of land. . . . That in order to prevent plaintiff from receiving the contract, the defendant unlawfully and with intent to defraud plaintiff, entered into a conspiracy with some of the members of the Harbor Board of Long Beach. . . . The aforesaid members of the Harbor Board were then secret stock-

holders and directors of the Long Beach Oil Development Company. . . . [T]hat but for said unlawful and fraudulent actions of this defendant [the plaintiff] would have received said contract.'' It is further alleged that the port manager, acting in concert with the Long Beach Oil Development Company, falsely informed the plaintiff that no bid bond would be required of him; such false representation was made with the intent to deceive the plaintiff who relied thereon and did not submit a bid bond. On information and belief, the plaintiff also alleges that sums of money were improperly used to influence the acceptance of the bid of the Long Beach Oil Development Company and the rejection of the plaintiff's bid. The defendant Long Beach Oil Development Company knew of all of such acts and conduct, ''but plaintiff did not know of such acts and conduct to his satisfaction until about October 1, 1958.'' Further allegations are that: ''Plaintiff has been out of the State of California much of the time since said contract was awarded; . . . that the first time he was given any real information upon which to base any real investigation, was when he read in the newspaper that . . . [a named person] had testified at a former hearing that in fact he had been the man who was responsible for said contract being awarded to the Long Beach Oil Development Co., this said newspaper clipping was first read by plaintiff in about June 1947.''[5] After detailing efforts to get information made thereafter by the plaintiff, the pleading states: '' [T]hat the secret nature of the transactions and the unwillingness of the officers to furnish any information is why plaintiff was unable to find the facts out sooner.'' Finally, it is alleged that there is a controversy in that the plaintiff claims that he is the beneficial owner of the contract and entitled to all the net profits therefrom whereas the defendants claim that he has no rights therein.

The seventh cause of action incorporates by reference all of the allegations of the preceding causes of action. The plaintiff alleges that he brings the action in his representative capacity as a taxpayer. He made demand upon the city council that an action be instituted by the city against the defendant Long Beach Oil Development Company but the city council failed and refused to do so. At the time Long Beach Oil Development Company made its bid and at the time it was

---

[5] In his points and authorities in opposition to the demurrers, the plaintiff states that through inadvertence the date was stated incorrectly and that it should be ''June, 1957.''

awarded the contract for oil development, a named person was a stockholder and director of that company and at the same time was serving on the Board of Harbor Commissioners of the city and voted upon and approved the awarding of the contract. The plaintiff asserts that the contract was void from the beginning and that moneys paid thereunder to the company should be returned to the city whereas the "defendants claim that the contract is valid and binding." It is stated that a controversy exists as to the validity of the contract.

In the eighth cause of action, all of the allegations of the other causes of actions are incorporated by reference. It is alleged that the plaintiff "has served written notice upon the Defendants and requested that they take appropriate actions of a legal nature to test and determine the rights of the Taxpayers of said City and to protect the rights of said parties herein," but that no actions have been filed and the defendants have failed and refused to protect the rights of the taxpayers. It is further alleged that in the event of any recovery in the action, the plaintiff will be entitled to be paid his expenses and attorney's fees and a reasonable sum for his efforts, which would be a charge upon any funds recovered.

One of the grounds stated in each demurrer to the second amended complaint was that there was a misjoinder of causes of action. (Code Civ. Proc., § 430.) The demurrer of the City of Long Beach and its city auditor specified the particulars in which it was claimed that there was such a misjoinder. The demurrer of the Long Beach Oil Development Company and the demurrer of the State of California did not and were, accordingly, defective. (*Miller* v. *Dyer*, 20 Cal.2d 526, 531 [127 P.2d 901, 141 A.L.R. 1428]; *Taliaferro* v. *Salyer*, 162 Cal.App.2d 685, 688 [328 P.2d 799]; *Adams* v. *National Auto. Ins. Co.*, 56 Cal.App.2d 905, 909 [133 P.2d 657]; 2 Chadbourn, Grossman and Van Alstyne, California Pleading, § 1168; 39 Cal.Jur.2d, Pleading, § 155.) That ground of demurrer is not mentioned in the points and authorities filed on behalf of the Long Beach Oil Development Company. But the points and authorities submitted by the State of California adopt by reference the State's points and authorities submitted in support of the demurrer to the first amended complaint; therein it is stated that the plaintiff "has joined nine purported causes of action, all of which are unrelated each to the other and no two of which arise out of the same transaction." One of the grounds upon which the demurrer of the City of Long Beach to the original com-

plaint was sustained was that of misjoinder of causes of action. The rulings with respect to the demurrers to the first amended complaint were based in part upon the ground of misjoinder of causes of action. Under the circumstances related hereinabove, it is obvious that the plaintiff was given ample notice of the nature of the claimed misjoinder. (Cf. *Ramey* v. *Myers,* 159 Cal.App.2d 82, 86 [323 P.2d 805].) Moreover, as will be discussed hereinafter, that several causes of action are improperly united readily appears from a reading of the second amended complaint and a detailed specification of the nature of the misjoinder would have added little by way of enlightenment. To fail to consider the merits of that attack upon the second amended complaint upon this appeal because of the defect noted in the statement of the ground of demurrer would be to proceed in a manner contrary to the admonition of section 4½ of article VI of the Constitution of this state. (Cf. *Anderson* v. *McNally,* 150 Cal.App.2d 778, 784-785 [310 P.2d 975].)

Under the provisions of section 427 of the Code of Civil Procedure, it is permissible to unite in a single complaint several causes of action which are based on claims arising out of the same transaction, or transactions connected with the same subject of action. **[2]** A liberal construction is to be given such provision for joinder. (*Blodgett* v. *Trumbull,* 83 Cal.App. 566, 572 [257 P. 199] ; 1 Chadbourn, Grossman & Van Alstyne, California Pleading, § 815.) Thus, in *Lord* v. *Garland,* 27 Cal.2d 840 [168 P.2d 5], at page 854, a contention that causes of action had been improperly united was rejected in the following language: "But certainly every transaction of the plaintiff, including the stipulation and order thereon, is connected with the constitutionality of the Caravan Act; and the validity of that statute is the question principally at issue in each count of the complaint."

When the second amended complaint is examined in the light of the applicable law, it is clear that a misjoinder of causes of action exists. The first cause of action is primarily a taxpayer's action challenging the constitutionality of chapter 29, Statutes of 1956, First Extraordinary Session, for the purpose of preventing the transfer to the State of California of funds alleged to belong to the City of Long Beach. The second cause of action is essentially one to determine the constitutionality of sections 12900-12915 of the Water Code insofar as they provide for disposition by the state of such funds when received from the City of Long Beach. It is

obviously directed primarily to a restraint of action by the state rather than by the city and arises out of the additions made to the Water Code in 1959 rather than out of the operative facts upon which the first cause of action must rest. The third cause of action is based on an alleged dispute as to whether certain lands, other than those with which the Long Beach Oil Development Company is concerned, are "uplands" belonging to the City of Long Beach or are tidelands as to which the state has rights. This dispute appears to concern the title to land producing revenue distinct from the revenue as to which definite provision is made in chapter 29, Statutes of 1956, First Extraordinary Session.[6] Hence the cause of action relates to a different subject matter than does the first cause of action. The fourth and fifth causes of action appear to relate to the subject matter which is embodied in the first cause of action inasmuch as they raise the question of the effect of the Submerged Lands Act of 1953 (43 U.S.C.A. §§ 1301 et seq.) upon the respective rights of the city and the state in submerged lands and the oil revenues derived therefrom.[7] By the sixth cause of action, the plaintiff seeks relief in his individual capacity, and not in his representative capacity as a taxpayer, with respect to the contract between the City of Long Beach and the Long Beach Oil Development Company; his cause of action is not one arising out of the same transaction or transactions connected with the same subject of action as those involved in the preceding causes of action. (Cf. *Pourroy* v. *Gardner*, 122 Cal.App. 521, 530-531 [10 P.2d 815].) While the seventh cause of action is asserted by the plaintiff as a taxpayer acting on behalf of the city in attacking that contract, the relationship to the preceding causes of action necessary for proper joinder does not exist.

---

[6]Subdivision (c) of section 2 of chapter 29 is as follows: "Some uncertainty exists as to the exact location of the boundaries of the Long Beach tidelands. Some uncertainty also exists as to whether certain wells in the Long Beach Harbor District have been and are producing oil, gas, and other hydrocarbon substances or dry gas from Long Beach tidelands or have been and are producing such substances from other land owned by the City of Long Beach. To settle these uncertainties will require the collection of a considerable amount of information and data, the conduct of surveys, and possible litigation."

Section 11 is as follows: "Nothing in this act shall be construed as an express or implied declaration of the exact location of the boundaries of the Long Beach tidelands, or of the tideland or upland character of any well or wells with respect to oil revenue and dry gas revenue derived from said well or wells on and after February 1, 1956."

[7]A discussion of the Submerged Lands Act is found in *People* v. *Hecker*, 179 Cal.App.2d 823, 836-837 [4 Cal.Rptr. 334].

Hence, the court below was justified in sustaining the demurrer of each defendant on the ground that there was a misjoinder of causes of action.

While the court sustained the demurrer of the City of Long Beach and its auditor to the first cause of action of the second amended complaint with leave to amend, it was sustained as to all other causes of action without leave to amend because of "multiple misjoinder of causes of action." The demurrer of Long Beach Oil Development Company was sustained as to all causes of action without leave to amend. The demurrer of the State of California was sustained as to the first cause of action with leave to amend and as to the remaining causes of action without leave to amend. In his brief, the appellant admits that he declined to amend as to the first cause of action "without leave to include and amend the other causes of action." The question presented is whether, under the circumstances of the present case, the defect of misjoinder of causes of action was a sufficient ground upon which to predicate a refusal of leave to amend. The solution of that question requires an examination of the plaintiff's original and first amended complaints and of a third amended complaint which the plaintiff unsuccessfully sought to file.

In the original complaint the plaintiff set forth eight causes of action. The first cause of action thereof was in substance the same as that alleged in the first cause of action of the second amended complaint. The second cause of action, as is true of the second amended complaint, was based upon the asserted invalidity of the 1959 additions to the Water Code which have heretofore been noted. The third cause of action alleged that there was an attempt by the State Lands Commission to reach a compromise with the City of Long Beach as to the boundaries of tidelands contrary to the provisions of chapter 2000, Statutes of 1957.[8] The fourth cause of action

---

[8]Chapter 2000 provides as follows: "Section 1. The State Lands Commission shall determine the boundaries of the tide and submerged lands conveyed in trust to the City of Long Beach by Chapter 676, Statutes of 1911, Chapter 102, Statutes of 1925, and Chapter 158, Statutes of 1935. The commission shall survey, monument, and plat the boundaries of such lands.

"The commission may bring any actions necessary to determine such boundaries, and for that purpose may employ special counsel.

"The commission shall report to the Legislature not later than February 15, 1958, its progress in carrying out the purposes of this act.

"The sum of fifty thousand dollars ($50,000) is appropriated out of the Investment Fund to the State Lands Commission for the purposes of this act."

related to a contemplated purchase of land by the City of Long Beach from the Ford Motor Company which land, the pleader asserted, already belonged "exclusively to the City of Long Beach" as part of the tidelands within the city. The subject matter of the fifth cause of action was the alleged contemplated purchase by the city from private persons of land made available for use in a certain part of the city because of a change in the high tide line. The sixth cause of action related to the proposed construction by the city of a seawall along part of Alamitos Bay, the cost of which was to be defrayed from the oil and gas revenue. The seventh cause of action was essentially the same as that set forth in the sixth cause of action of the second amended complaint, but the allegations of the plaintiff are greatly expanded in the latter pleading. By the eighth cause of action the plaintiff sought to recover his expenses and attorney's fees and a reasonable sum for his efforts "if any sums are recovered or if any benefits are received by reason of this action." The special demurrer of the city to the original complaint was sustained on the ground that there was a misjoinder of causes of action and that the seventh cause of action was uncertain, ambiguous and unintelligible in certain respects.

The plaintiff filed a first amended complaint in which he set forth nine causes of action. The first cause of action was in substance that alleged in the original complaint and subsequently alleged in the second amended complaint. The subject matter of the second cause of action in all three complaints related to the asserted invalidity of the provisions added to the Water Code in 1959 as to the use of oil revenue by the state. The third cause of action of the first amended complaint involved the same matter as did the third cause of action in the original complaint, although there was some change with respect to the allegations made. While the fourth cause of action as set forth in the first amended complaint was redrafted, the primary legal issue attempted to be presented concerned the title to the land from which the Ford Motor Company had been extracting oil and, specifically, whether such land was part of the land granted to the city by the State of California. The fifth cause of action of the first amended complaint referred to the same geographical area as did the fifth cause of action of the original complaint but alleged that oil and gas had been extracted therefrom and that the City of Long Beach owned the property in fee simple but that the State of California claimed an interest therein

and in the revenue therefrom. The sixth cause of action of the original complaint was omitted in the first amended complaint; the sixth cause of action of the latter pleading was basically the same as the fourth cause of action of the second amended complaint, except that the latter makes no specific reference to impounded funds and is concerned with the effect of the Submerged Lands Act of 1953 (43 U.S.C.A. §§ 1301 et seq.) upon the respective rights of the city and the state. The seventh cause of action of the first amended complaint was in substance the same as the seventh cause of action of the original complaint and the sixth cause of action of the second amended complaint; therein the plaintiff sought recovery in his individual capacity. The eighth cause of action of the first amended complaint was not found in the original complaint but was in substance the same as the seventh cause of action of the second amended complaint and attempted to raise the issue of the validity of the contract made in 1939 with the Long Beach Oil Development Company because of asserted adverse interests on the part of certain city officials who acted with respect thereto. The ninth cause of action of the first amended complaint was concerned with the plaintiff's claim of a right to reimbursement for attorney's fees and expenses, together with a reasonable sum for his efforts, "if any sums are recovered or if any benefits are received by reason of this action." The general demurrer of the City of Long Beach and its auditor was sustained as to certain causes of action of the first amended complaint; the special demurrer of those defendants on the ground of misjoinder of causes of action was sustained as to the fourth, fifth, sixth, seventh and eighth causes of action; leave to amend was granted. The general demurrer of Long Beach Oil Development Company was sustained with respect to all causes of action; its special demurrer on the ground of misjoinder of causes of action was sustained as to the first, second, third, fourth, fifth and sixth causes of action; leave to amend was granted. The demurrer of the State of California was, with the plaintiff's consent, sustained without leave to amend as to the third, fourth and fifth causes of action; the state's demurrer was "otherwise sustained on all grounds stated," with leave to amend.

As has been noted, in the second amended complaint the plaintiff persisted in joining a cause of action with respect to the Long Beach Oil Development Company contract, which contract was executed in 1939, in which cause of action he sought recovery as an individual, a taxpayer's action relating

to the validity of that contract, and a cause of action as to the validity of the 1959 amendments to the Water Code relating to the disposition of revenue by the State of California, with causes of action relating to the respective rights of the city and state in tidelands and submerged lands and the revenues therefrom. In his proposed third amended complaint, he set forth six causes of action. The substance of the first cause of action was the same as that contained in the first cause of action of each preceding complaint. The language of the second cause of action of the proposed third amended complaint was directed to the statement of a controversy as to whether certain state legislation had the effect of releasing oil and gas revenues, in whole or in part, from any trust. The third cause of action was practically identical with the fourth cause of action of the second amended complaint, except that it was further alleged that the Long Beach Oil Development Company "claims its contract to develop said lands is valid and in full force and effect as to submerged lands." The fourth cause of action related to the federal legislation heretofore noted and the release of impounded funds pursuant thereto, being the same subject matter as was set forth in part of the sixth cause of action of the first amended complaint; it was further alleged that the greater part of the released funds was on deposit in the State Water Fund of California; a determination of the respective rights of the city and the state as to such funds was sought; there was a further allegation that the Long Beach Oil Development Company "claims that it owns all of the funds turned over to it as a just operating net profit on said lands." The fifth cause of action of the proposed pleading related to the same subject matter as the eighth cause of action of the first amended complaint; therein the plaintiff as a taxpayer sought to raise the issue of the validity of the contract between the city and the Long Beach Oil Development Company, the basis of the attack being the alleged adverse interests of public officials who participated in the transaction. The sixth cause of action related to the reimbursement of the plaintiff for attorney's fees and expenses and the recovery by him of "a reasonable sum for his efforts."

It is manifest that the plaintiff persisted in uniting causes of action in each of the amended complaints which could not properly be joined. In the proposed third amended complaint he continued to join a cause of action relating to the 1939

contract between the city and the Long Beach Oil Development Company with causes of action with respect to a distinct subject matter, namely, the respective rights of the city and state in the lands and the revenues therefrom. While ordinarily a special demurrer should not be sustained without leave to amend (see *Veterans' Welfare Board* v. *City of Oakland*, 74 Cal.App.2d 818, 822 [169 P.2d 1000]), there must be some limitation on the right to amend under circumstances such as are found in the present case. (See 2 Chadbourn, Grossman & Van Alstyne, California Pleading, § 1356.) Guidance is found in the reasoning of the Supreme Court in *Billesbach* v. *Larkey*, 161 Cal. 649 [120 P. 31]. Therein it was said at pages 653-654: ''While the pleading might be sufficient to withstand a general demurrer, we cannot regard it as sufficient to inform the defendant of the particular act of negligence, charged against him, when the objection is taken by a special demurrer pointing out the uncertainty.

██ ''Ordinarily the trial court should be liberal in allowing amendments where the defect in the complaint is one of form only. This, however, is a matter which is almost entirely within the discretion of that court and this court can reverse the case only when there is a manifest abuse of discretion in giving final judgment on demurrer without leave to amend.

██ The plaintiff does not have a positive right to amend his pleading after a demurrer has been sustained to it. His leave to amend afterwards is always of grace, not of right. (Code Civ. Proc., § 472.) In the present case the final pleading of the plaintiffs was the third amended complaint. It was, therefore, their fourth attempt to state a cause of action. It cannot be commended as a model, after all this effort and amendment. The refusal of leave to amend was not an abuse of discretion. The complaint being defective in this particular and the demurrer having been properly sustained for that reason, it is unnecessary to consider the question of the statute of limitations.'' (See also *Lamb* v. *Ward*, 101 Cal.App.2d 338, 342-343 [225 P.2d 317] ; *Ellerhorst* v. *Blankman*, 102 Cal. App. 133, 134-135 [282 P. 507] ; *Consolidated Concessions Co.* v. *McConnell*, 40 Cal.App. 443, 446 [180 P. 842].) ██ There was no abuse of discretion in the present case.

██ As has been noted, permission to amend was granted as to the first cause of action but the plaintiff refused to do so unless he could amend other causes of action. It is a reasonable conclusion that the court below desired to give the plaintiff a further opportunity to attempt to plead properly a

cause of action with respect to the subject matter pertinent to the most comprehensive issue sought to be raised, namely, the rights and duties of the city and its officers concerning the disposition of oil and gas revenue derived from tidelands and submerged lands. Since the plaintiff's action amounted to an election to stand on his first cause of action as pleaded in the second amended complaint, the merits of the general demurrer to that count must be considered. The plaintiff seeks a declaratory judgment and an injunction against the alleged improper disposition of property of the city. But, generally speaking, a municipality has the power to settle and compromise claims in its favor or against it where there is a bona fide reasonable doubt or dispute as to the validity thereof or the amount due with respect thereto.[9] (See *O'Connell* v. *Pacific Gas & Elec. Co.*, 19 F.2d 460, 461; note, 15 A.L.R.2d 1359, 1363; note, 105 A.L.R. 170; 38 Am.Jur., Municipal

[9] The compromise and settlement negotiated between the City of Long Beach and the state of the state's action instituted on September 16, 1955, is noted by this court in *Stratton* v. *City of Long Beach*, 188 Cal. App.2d 761, 766 [11 Cal.Rptr. 8]. In *Mallon* v. *City of Long Beach*, 164 Cal.App.2d 178 [330 P.2d 423], reference is made thereto as follows, at pages 180-181: "On April 5, 1955, the Supreme Court rendered its opinion on the appeal from the order sustaining the demurrers (*Mallon* v. *City of Long Beach*, 44 Cal.2d 199 [282 P.2d 481]), reversing the lower court and holding that the Act of 1951 effected a partial revocation of the trust over the tide and submerged lands releasing certain revenues from the trust, but that the monies were released *not to the city of Long Beach but to the State of California*, and operated to transfer to the state 50 per cent of the income from oil and gas and 100 per cent of the income (past, present and future) from dry gas derived from the city's tide and submerged lands.

"After this decision and in July of 1955, the city amended its answer admitting the prior transfers of trust revenues into the municipal treasury, but contending it acted in good faith believing that under the Act of 1951 they had been released to it and therefore belonged to the city and that the expenditures were proper; and asserting that it would discontinue its prior practices of transferring and using the funds for its own purposes, did not intend to do so in the future, and that an injunction to prevent further diversion of funds was not necessary.

"Shortly thereafter in August of 1955 the state, seeking to recover the funds released to it under the ruling of the Supreme Court (*Mallon* v. *City of Long Beach*, 44 Cal.2d 199 [282 P.2d 481]), unsuccessfully attempted to intervene in the instant case. On September 16, 1955, it filed an action of its own against the city entitled '*People of the State of California, et al.* vs. *City of Long Beach, et al.*, No. 649466, in the Superior Court of Los Angeles County' (hereinafter referred to as the People's case) to recover the revenues. Negotiations for settlement arose and no proceedings were taken until after the Legislature passed the Act of 1956 (Stats., 1st Ex. Sess. 1956, ch. 29), effective July 5, 1956, which supplied legislative approval of settlement of the People's case, fixing the sum payable by the city to the state as $120,000,000, for all claims to the funds as of January 31, 1956, monthly payments by the city to the state for future accruals of 50 per cent of the oil and gas

Corporations, § 396; 17 McQuillin, Municipal Corporations (3d ed., 1950), §48.17.) In *Shipp* v. *Rodes,* 219 Ky. 349 [293 S.W. 543], the court cited numerous authorities in support of the statement that (293 S.W., at p. 546) : ''. . . we understand the rule to be well established that pending litigation to recover on claims that are unliquidated and uncertain in amount may be compromised by the state or any of its political subdivisions at any time before final judgment.'' This court stated in *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278 [295 P.2d 113], at page 289: ''Generally, a municipality, through its governing body, has control of the property and general supervision over the ordinary business of the corporation. Where the thing in question is within the discretion of the governing body, neither the state nor any private citizen can question the action or nonaction of such body by any judicial proceeding. A citizen and taxpayer cannot maintain an action to protect the interests of the municipality when there is no immediate duty enjoined upon the governing body or the municipality to bring a similar action, but they have discretion to refuse to bring it. (*Dunn* v. *Long Beach Land & Water Co.,* 114 Cal. 605, 609 [46 P. 607].)''

In *Elliott* v. *Superior Court,* 180 Cal.App.2d 894 [5 Cal.Rptr. 116], the court said at page 897: ''A court cannot interfere with state officials in the exercise of their discretionary acts. [Citations.] At least this rule applies in the absence of fraud or an abuse of discretion.'' The difficulty with the plaintiff's pleading is that it is replete with conclusions of law but deficient in the statement of facts from which the court may determine that an actual justiciable controversy exists with respect to the rights and duties of the parties involved. (See *Lord* v. *Garland, supra,* 27 Cal.2d 840, 851; *City of Alturas* v. *Gloster,* 16 Cal.2d 46, 48 [104 P.2d 810].) The plaintiff fails to state a factual basis for an attack upon the legislation in question insofar as the City of Long Beach, for which municipality he purports to act, is concerned. (See *Frederick* v. *North Side Water Co.,* 49 Cal. App.2d 489, 490 [122 P.2d 59].) Since there are no facts

revenues and 100 per cent of the dry gas revenues, and providing the judgment to be rendered in the People's case to be final. Pursuant thereto a stipulated judgment was entered in the People's case on September 11, 1956.

''Under the consent decree the city on October 31, 1956, paid to the state, in full settlement of all claims to the funds in question up to February 1, 1956, the sum of $122,339,133.89. It thereafter started making monthly payments as provided in the judgment and as far as we know has continued to do so.''

alleged which, if proved, could support a determination that as between the state and the City of Long Beach there existed no controversy which could justify a compromise, it cannot be said that the general demurrer was improperly sustained.

In view of the conclusions reached herein, it is not necessary to discuss other questions such as whether the demurrer of the Long Beach Oil Development Company was sufficient in form to raise the bar of the statute of limitations as to the sixth cause of action of the second amended complaint (see Chadbourn, Grossman & Van Alstyne, California Pleading, § 1264; *Graham* v. *Los Angeles First Nat. Trust & Sav. Bank,* 3 Cal.2d 37, 43-44 [43 P.2d 543]; cf. *Williams* v. *International Longshoremen's & Warehousemen's Union,* 172 Cal.App.2d 84, 88 [341 P.2d 729]) and whether if that legal issue was raised, the cause of action appears to be barred (see *Schaefer* v. *Berinstein, supra,* 140 Cal.App.2d 278, 294-295; *Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d 57, 60, 66 [9 Cal.Rptr. 555]; *Johnson* v. *Nolan,* 105 Cal.App. 293, 294 [288 P. 78]); whether the seventh cause of action of the second amended complaint is barred by laches (see *Warfield* v. *Anglo & London Paris Nat. Bank,* 202 Cal. 345, 356 [260 P. 881]; *Hencken* v. *City of Morgan Hill,* 21 Cal.App.2d 438, 444 [69 P.2d 462]); and whether in this case there is lack of jurisdiction insofar as the state is concerned because of the doctrine of sovereign immunity. (See *People* v. *Superior Court,* 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919]; *Stafford* v. *People,* 144 Cal. App.2d 79, 83 [300 P.2d 231]; 45 Cal.Jur.2d, State of California, §§ 159-160.)

The plaintiff suggests that this appeal should not be determined "upon technical grounds of procedure" but rather that this court should "pass upon and decide all questions of law in full on this appeal so that legal questions can be definitely and finally decided." But the plaintiff has not presented a pleading which enables the court to reach the questions of constitutional law which he apparently seeks to have decided. As this court said in *Stafford* v. *People, supra,* 144 Cal.App.2d 79, at pages 82-83: "The courts do not decide questions of constitutional rights unless they are required to do so in order to make a proper disposition of the cause. It was said in *Palermo* v. *Stockton Theatres, Inc.,* 32 Cal.2d 53, 65 [195 P.2d 1]: 'It has been suggested . . . that we should reverse our previous holdings and dispose of this case by ruling that "the statute here involved is clearly unconstitutional, and should, therefore, be stricken down." We are of the view

that this issue, unnecessary to the decision, should not be decided here or made the subject of a dictum. It has heretofore been considered against the policy of this court (and of courts of last resort generally) to reach out and unnecessarily pronounce upon the constitutionality of any duly enacted statute. At least as early as *Estate of Johnson* (1903) 139 Cal. 532, 534 [73 P. 424, 96 Am.St. Rep. 161], this court said, ''A court will not decide a constitutional question unless such construction is absolutely necessary'' (see also *Marin Municipal Water Dist.* v. *Dolge* (1916), 172 Cal. 724, 726 [158 P. 187]. . . .' ''

The judgment is affirmed.

Shinn, P. J., and Frampton, J. pro tem.*, concurred.

*Assigned by Chairman of Judicial Council.