[Civ. No. 26863. Second Dist., Div. Four. Aug. 9, 1963.]

OWEN JACKSON, Plaintiff and Appellant, v. JOSEPH R. NEAVES, JR., et al., Defendants and Respondents.

Nathan Goller for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton and Stephen C. Taylor for Defendants and Respondents.

JEFFERSON, J.—Plaintiff's assignor paid defendants $20,400 by paying $5,100 for four successive options to purchase defendants' controlling stock of a mining corporation and certain promissory notes owned by one of defendants, which notes were payable by the corporation. The original agreement, containing the first option, dated June 23, 1958, made time the essence of the contract and provided specifically for extending the option period upon the payment of the amount of $5,100 for each extension, the agreement providing:

"In no event is the full time of the escrow and date of final payment of the full purchase price to each of you to exceed a period of 90 days from the date hereof.

"In the event of our failure to pay you respectively the sums provided above to be paid for the 1st and/or 2nd extension, at the time provided, the escrow shall cease and terminate and any monies paid by us for the privilege of this escrow shall be deemed to have been *forfeited by us because of our failure to perform—for any reason whatsoever.*

"In the further event that we fail to pay the total balance owing to each of you respectively on the 90th day, defined above, (provided always that said escrow has been extended for said periods by reason of our having made the payments provided for such extensions) *this escrow shall cease and terminate as of said due day, and said offer shall be deemed to have been withdrawn by us—and thereby canceled by our own free will as well as by default—and you shall retain any and all sums paid to you by us pursuant to the terms hereof as forfeiture and liquidated damages.*" (Italics added.)

Plaintiff's assignor did not exercise his option to buy the stock. However, continuing efforts were made to secure controlling ownership of the corporation and three additional purported agreements were allegedly entered into between the parties, the record not disclosing whether the second and third purported agreements were signed by the parties, unsigned copies being filed as exhibits to plaintiff's third amended complaint. A fourth agreement, dated June 12, 1959, was executed, which contained, among other things, the following provision:

"If such formal approval [of the Securities Exchange Commission] has not been affirmatively had by midnight of the said fortieth day this agreement shall terminate and end, ipso facto, and the parties shall be restored to their respective status prior to any negotiations between them and none shall be liable in any sum to any other for any cause whatsoever."

The approval of the commission was not obtained and plaintiff brought this suit attempting to recover the $20,400 which had been paid pursuant to the terms of the first agreement. A general demurrer to the first cause of action of plaintiff's third amended complaint was sustained without leave to amend. Plaintiff subsequently moved to dismiss a second cause of action which was then at issue, an answer of defendant having been filed thereto. The whole action was thereupon dismissed by the court and judgment of dismissal entered, from which plaintiff appeals.

The portions of the agreements above quoted indicate the theory upon which plaintiff hoped to recover the option payments, the pertinent words being, ". . . and the parties shall be restored to their respective status prior to any negotiations between them and none shall be liable in any sum to any other for any cause whatsoever." Plaintiff interprets this phrase to mean that the parties were to be restored to their respective status prior to the *first* agreement, not the fourth agreement. It appears that plaintiff admits an ambiguity results from his own interpretation of the fourth agreement, because of the words, "none shall be liable in any sum to any other for any cause whatsoever." He nevertheless contends that a possible interpretation of the meaning of the words is that the parties to the contract intended all moneys paid ($20,400), would be returned, thus restoring them to a status where none would be liable to the other.

Two principal questions are raised in this appeal:

(1) Does the third amended complaint state a cause of action on any theory?

(2) If the complaint does not state a cause of action, can it be amended to state a cause of action?

Not until the third amended complaint did plaintiff incorporate the four "agreements" in his pleading, nor did he verify his complaint until ordered to do so by the court after a motion had been made to strike the pleading as sham. By such incorporation, and by reason of allegations in his pleadings that each purported "agreement" was a separate agreement, not a part of "one transaction," the plaintiff presented fatal contradictions to any theory of recovery. He alleged that the prior agreements were "abandoned," yet further alleged they were perpetuated and "new life" was given them by the last agreement. He contends that the last agreement can be considered alone and that return of the moneys paid would be part consideration therefor. However, to connect such agreement with the first agreement under which

the money was paid, it would be necessary to consider each agreement as part of one transaction. Nowhere in the "agreements" do we find any intention expressed supportive of plaintiff's contentions. On the contrary, the terms are clear and explicit and definitely set forth the purposes of each and the consequence to plaintiff's assignor of failure of performance, namely, that the option payments, pursuant to the first agreement, would be retained by defendant and that the parties would not be liable to each other in the event of nonperformance under the later agreements. It might appear that plaintiff could urge an oral agreement by which the alleged legal effect of the four separate agreements was made "one transaction," but if so defendants properly indicate that any such oral agreement would have been outlawed by the applicable two-year statute of limitations.

Rules of interpretation of contracts, as particularly set forth in our Civil Code (§§ 1635-1662), require that the intent of the parties, *inter alia*, be determined by the language presented in the written document if clear and explicit (§§ 1638, 1639). Further, such construction must be reasonable (§ 1643). It is patently unreasonable to interpret the fourth agreement to allow plaintiff, who has alleged "abandonment" of the first agreement, to demand the return of the consideration paid for options by the device of alleging a condition (the securing of the approval of the Securities Exchange Commission), which he (plaintiff's assignor) might or might not perform at his own discretion. The absurdity appears more pronounced when it is considered that by such a device mere nonperformance would operate to undo the effect of the first agreement and require repayment.

The reasonable interpretation of the "agreements," on the other hand, is clear and obvious. The first agreement expired by its very terms upon its due date and defendants were no longer obligated to sell their property as therein agreed. The first agreement states, "The basis of payment suggested for these properties is that we shall pay Neaves the sum of $5,000.00 and Guarino the sum of $100.00 *as consideration for entering into an escrow for a period of thirty days only* from date of opening of such escrow." (Italics added.) Provision was made for further 30-day extensions, with the agreement to permit application of the moneys paid *for the extensions* to the total purchase price. Plaintiff alleged in in his third amended complaint, that such moneys were paid as "consideration for entering into an escrow for thirty

180

days. . . ." Hence, it is evident that such payments were made for the exclusive right to buy the stock and notes, not the stock itself, and although the first agreement uses the terms "forfeit," "forfeiture" and "liquidated damages" in connection with plaintiff's assignor's failure to perform "for any reason whatsoever," the intent is clear, from the instrument read as a whole, that the money was paid for the *extensions* of the right to buy, with the right *upon performance* to apply such payments on the purchase price, such payments, however, upon default, to be the property of defendants unconditionally. (*Caras* v. *Parker,* 149 Cal. App.2d 621 [309 P.2d 104].) No revivor of any obligations expressed in the first agreement is anywhere alluded to in the subsequent agreements, nor do we find any specific reference to the option payments being returnable, upon any condition, in any of the purported agreements. This interpretation is bolstered by the statement in the fourth agreement that upon failure of plaintiff's assignor to secure the approval of the Securities Exchange Commission, the parties would not be obligated to each other "for any cause whatsoever."

The interpretation placed on the fourth agreement by the court presents no ambiguities or contradictions, and is, that the parties would be restored to their respective status prior to *that* agreement of June 1959, at which time no liabilities existed between the parties because the prior "agreements" no longer existed; they had expired by their own terms and had been "abandoned" and "superseded" according to plaintiff's own verified pleadings.

The certified allegations of plaintiff's complaint, in which the "first agreement" of the parties was referred to as "abandoned," acknowledged termination of the "first agreement" by nonperformance of plaintiff's assignor. Further, such inherent defects in the pleading would persist in any further pleading, the conclusive finality of the terms of the first agreement precluding any attempted recovery of the moneys paid thereunder. (*Whitson* v. *City of Long Beach,* 200 Cal.App.2d 486, 504 [19 Cal.Rptr. 668].) Accordingly, both questions of plaintiff on appeal are answered in the negative.

The judgment is affirmed.

Burke, P. J., and Kingsley, J., concurred.